# Willing's Estate.

*Wills—Construction—Annuity payable in paper or gold francs
—Waiver by annuitants.*

1. An annuity payable in francs under a will of a person domiciled in France from an estate held by an American trustee and invested in America, is payable at the value of the franc in dollars at the time of the making of the will, and not in accordance with a later value of the franc under a depreciated rate of exchange.

2. The question involved is not the date at which the foreign money shall be computed in dollars, but whether the testator meant the annuitants to receive the sums allowed on the basis of the gold or paper franc, the one standard definite, and the other liable to fluctuation.

3. Willing's Est., 288 Pa. 337, followed.

Mr. Chief Justice MOSCHZISKER dissented.

Argued December 7, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 307, 308, and 310, Jan. T., 1927, by Rupert Fetherstonhaugh, Robert E. Lee DePotestad and Violet Lee Willing Morris et al., from decree of O. C. Phila. Co., Jan. T., 1897, No. 264, dismissing exceptions to readjudication in estate of Mathilda Lee Willing, deceased. Reversed as to Nos. 307 and 308. Affirmed as to No. 310.

Exceptions to readjudication of GEST, J.

The opinion of the Supreme Court states the facts.

Exceptions of all parties dismissed in opinion by VAN DUSEN, J.

Rupert Featherstonhaugh and Robert Lee DePotestad appealed in Nos. 307 and 308.

Violet Lee Willing Morris personally and as guardian of her minor children, Eleanora Willing Patterson, and Francis D. Patterson, guardian ad litem of the minor

children of Eleanora Willing Patterson, appealed in No.
310.

*Errors assigned* were exceptions to adjudication, quoting record.

*John Hampton Barnes,* for appellants in No. 310.—
Where a testator is domiciled abroad and makes his
will there without directing the kind of currency or
money which is to be used to satisfy legacies and annuities, the currency or money of the country of the domicile of the testator is to govern, even if the estate upon
which the payments are charged is located, and the annuitants or legatees who are to receive them are domiciled, in another country: Saunders v. Drake, 2 Atkyns
465; Pierson v. Garnett, 2 Bro. C. C. 38; Cockrell v.
Barbor, 16 Vesey, Jr. 461; Otis v. Coffin, 7 Gray 511.

Foreign money is a commodity, and the direction to
pay a certain amount of foreign money is satisfied by
the tender to the annuitants annually of 10,000 francs,
in which event no question of the rate of exchange
could arise between the annuitant and the trustee, and
if the trustee procures those francs and gives them to
the annuitants, they cannot reasonably be held to object. The trustee would, of course, be obliged to purchase the francs as a commodity, and therefore a tender
of the amount of dollars necessary to purchase the
francs at the time the annuities fell due would be
equivalent in effect to a tender in francs themselves,
where the annuitant, as here, has requested that the
payment be made in dollars: Hess's Will, 198 N. Y. S.
573; Lee v. Wilcocks, 5 S. & R. 48; Liberty Nat. Bank
v. Burr, 270 Fed. 251; Milligan v. Marshall, 38 Pa.
Superior Ct. 60; Page v. Levenson, 281 Fed. 555.

The learned auditing judge erred in applying the rule
of intention of the testatrix to the interpretation of
the will without any regard to the fact that the terms
of the will upon its face are clear and unambiguous

and that no resort was necessary to outside facts for its construction: Hunter's Est., 6 Pa. 97; Reck's App., 78 Pa. 435.

*Hampton L. Carson,* with him *Joseph Carson* and *Shirley Carter,* for appellees, in No. 310.—The term franc in an American will is ambiguous.

The franc as known to the testatrix, determined at her death the standard of payment of annuities.

The will did not mean franc as a commodity.

There was no additional burden to the estate to maintain the annuities as of date of death of testatrix: Hess's Case, 120 Misc. Rep., N. Y., 372; Graveley v. Graveley, 25 S. C. 1; Chemical Nat. Bank v. Butt, 206 N. Y. S. 36.

*Hampton L. Carson,* with him *Joseph Carson* and *Shirley Carter,* for appellants in Nos. 307 and 308.— There is no waiver in this case.

Even had the receipts been in full satisfaction and discharge, they would not have operated as a discharge unless under seal: McNutt v. Loney, 153 Pa. 281; Girard F. & M. Ins. v. Canan, 195 Pa. 589; Evesson v. Ziegfeld, 22 Pa. Superior Ct. 79.

As it is beyond dispute that the claim for arrearages of the annuities was not before the Superior Court, the account not raising such a question, and was therefore defective, as this court has ruled, the doctrine of res judicata cannot arise. A distributive income account is conclusive only as to matters contained therein: Kellerman's Est., 242 Pa. 3.

*John Hampton Barnes,* for appellees in Nos. 307 and 308.—If,—with full knowledge of the existence of their claims against an estate,—interested parties, either through intention or neglect, do not present such claims until after a final adjudication of an account,—wherein they have been represented at the audit thereof by counsel,—they are barred by their failure to present

their claims at the proper time: Jenkins v. Scranton, 205 Pa. 598; Long v. Bank, 211 Pa. 165; Stradley v. Cement Co., 228 Pa. 108; Thompson v. Graham, 246 Pa. 202; Anhaltzer v. Benedum, 266 Pa. 113.

OPINION BY MR. JUSTICE SADLER, January 3, 1928:

Mathilda Lee Willing, a citizen of the United States, temporarily residing in France, disposed of her property by a will, probated in this state. Therein she provided for certain annuities of 10,000 francs each, the value of the franc at the time of her death being slightly less than twenty cents. Due to the war, the rate of exchange of the paper franc fell until in 1923 it was reduced to less than five cents, and upon this exchange rate the annuitants were for the time being paid. In 1924 an account of principal and income was filed for the purpose of determining whether the annual sums should be satisfied on the basis of the gold or paper franc value. The orphans' court held the former standard applied under the circumstances presented, and its determination was affirmed by the Superior Court: Willing's Estate, 84 Pa. Superior Ct. 546. Payments in 1924 for the preceding year were therefore made as directed. Demand was then made for the difference between the sums actually turned over from 1918 to 1923 and the amounts due, if the gold franc was considered the proper measure of annuitants' rights. A review of the second account, covering the years in dispute, was asked, so that the sums claimed could be awarded, but this was refused as without authority. On appeal, the ruling was reversed, and the record remitted with a procedendo. This court held there was no bar to the assertion of the demand for the additional sums admittedly unpaid. A discussion of the facts involved, and the legal principles applied, will be found in the reported case, Willing's Estate, 288 Pa. 337.

Upon the return of the record, a new adjudication was made by the orphans' court, as ordered, and awards

for the deficiencies in payments for the prior years made to the annuitants. As was properly said by the auditing judge: "In accordance with these clear expressions [of this court] as to the rights of the annuitants, it would be useless if not impertinent for me to consider whether the annuitants had not waived any claim to the arrearages of their annuities, or whether they did not have their day in court on the audit of the second account, and I must hold that they are entitled upon this review to the arrearages claimed." This conclusion was in accord with the directions expressly given, and which were not modified by any subsequent order. It was plainly decided there was no waiver by appellants of their right to demand payment of the sums withheld in previous years.

When the first appeal was argued, no assignment of error raised the question as to whether the value of the paper or gold franc should fix the amount due to annuitants, a question which had been decided by the Superior Court on the appeal from the adjudication of the 1924 account, which dealt, however, only with the payments for the year 1923. So that it should be made clear that this court had not passed directly on the question suggested, two phrases of the original opinion filed in this court were slightly changed in verbiage and marked of record. Instead of saying that "the annuitants were clearly entitled" to be paid on the gold basis, the wording was modified so as to read "were entitled by the decision of the Superior Court" to be indemnified by that standard, and again in referring to the same decision the words "proper legal rule" were changed to "rule there laid down." In no respect were our views on the subject of reopening the account before us altered, nor was there any intimation that the facts might show a waiver by annuitants of their rights by having accepted payment on the basis of the paper franc from 1918 to 1923, and subsequent failure to file exceptions to the account on this ground,

The court below misapprehended the effect of the modification referred to, though it is difficult to see how the record change of language above set forth could lead to such conclusion, and held it had been given the right to determine whether annuitants had abandoned their rights by failing to object to the items of debit and credit in the account filed, a question expressly decided in the negative here. On petition, the orphans' court reopened its adjudication of March 2, 1927, holding there could be no award to the claimants for the years 1918 to 1923, because of the waiver which it found to exist. This was the position which it had assumed in the first instance, and which was reversed by this court. From this reaffirmation of its original position, and in contradiction of the one expressed here, the annuitants have again appealed, and without repeating the reasons heretofore given, and found in the previous report of the case (288 Pa. 337), the assignments of error are sustained.

The second question, raised by an appeal of the residuary legatees, is directed to the ruling that the annuities are to be measured by the value of the gold, rather than the paper, franc. The lower court, in the first proceeding, held the former to be the standard, and was affirmed by the Superior Court: 84 Pa. Superior Court 546. The former case, on appeal before us, was on writ of error sued out by the annuitants, who complained not of the standard of payment fixed, but of the refusal of the petition of review, the residuary legatees not being appellants. The assignments of error then presented were directed to the latter question, and no general discussion of the proper valuation of the franc was deemed necessary in the opinion filed, but the unappealed from decision of the Superior Court, where the same parties appeared, was treated, for the purpose of the case, as binding. When the orphans' court filed its latest adjudication, it again sustained its ruling, originally made by a divided court, that, under the will, the

annuitants were entitled to payment on the basis of the gold franc, though deciding the right to claim any unpaid sum prior to 1924 had been lost. Of its ruling that the gold value of the franc should be used in calculating the amounts due, the residuary legatees now complain.

All of the cases cited in the able argument for appellants were considered by the Superior Court in its decision previously referred to, with the exception of one, dealing with payment under a contract which called for the delivery of marks depreciated in value after the time of the making of the agreement: Anderson v. Equitable Assurance Society, Law Times, May 1, 1926, p. 559. As pointed out by Judge KELLER, in the opinion of the Superior Court above referred to, rulings in such class of cases are not controlling of the present situation. Where parties have agreed that an obligation shall be satisfied by the payment of fixed foreign currency, then the sum involved must be translated into dollars as of the date of bringing suit: Deutsche Bank v. Humphrey, 272 U. S. 517.

In the present case, we are dealing with a testamentary disposition by a resident of Pennsylvania, whose estate was located and to be distributed here. The question involved is not the date at which the foreign money shall be computed into dollars, but whether the testator meant the annuitants to receive the sums allotted on the basis of the gold or paper franc, the one standard definite, and the other liable to fluctuation. Her intention was evidently to devote some stable and fixed sum for the life use of those whom she named as beneficiaries. All of the distributable income would be collected in American dollars, and the number of these which could be secured for the 10,000 francs named, was in her mind when the will was executed. This amount, measured by the value in gold, as it was when the bequest was made, the annuitants are entitled to receive, and the Superior Court correctly so held. Fur-

ther discussion of the authorities considered by it would be useless, for our examination of them leads to the same conclusion. It follows that the assignments of error filed on the appeal by the residuary legatees must be overruled.

The decree of the court below in Nos. 307 and 308, January Term, 1927, is reversed, and the record is remitted with a procedendo; and the decree in 310, January Term, is affirmed. Costs in all three appeals to be paid by the estate.

Mr. Chief Justice MOSCHZISKER dissented.