McFerren Estate.

Argued October 5, 1950. Before DREW, C. J., STERN, STEARNE, JONES and CHIDSEY, JJ.

A. J. *White Hutton,* with him *John A. Smarsh* and *Robbin B. Wolf,* for Ruth McFerren Roof et al., appellants.

*Robert W. McWhinney,* for Mabel Elizabeth Miller Price et al., appellants.

*Arthur W. Henderson,* with him *Judson A. Crane, William S. Moorhead, Jr.* and *Moorhead & Knox,* for Edna Reynolds McCaulley, appellant, and Rose Reynolds et al., appellees.

*Kenneth P. Christman,* for Edward H. Walters, appellant (at No. 145), and appellee (at Nos. 140, 141 and 142).

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 13, 1950:

Eight appeals have been taken from a definitive decree of distribution of a decedent's estate by the Orphans' Court of Allegheny County. All relate to ademption and lapse of *legacies.*

Before considering the various appeals the general principles of law relating to this subject matter must be examined. An *ademption* occurs where a legacy is *specific* and the thing bequeathed is disposed of by testator in his lifetime. There is no ademption, however, where the legacy is *general.* A legacy *lapses* because of the death of the legatee in the lifetime of testator, except where prevented by statute. This is in the absence of an express or implied intent of testator to the contrary. A *specific legacy* has been defined as a gift by will of a specific article or part of testator's estate,

which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing: *Snyder's Estate,* 217 Pa. 71, 66 A. 157; *Wood's Estate,* 267 Pa. 462, 110 A. 90; *Lenhart's Estate,* 344 Pa. 358, 25 A. 2d 725. A *general legacy* is one without such words of identification. A *specific* legacy is adeemed where the thing bequeathed was not a part of testator's estate, whether because it was sold, exchanged, or converted into another form: *Hoke v. Herman,* 21 Pa. 301; *Pruner's Estate,* 222 Pa. 179, 70 A. 1000; *Horn's Estate,* 317 Pa. 49, 175 A. 414; *Wood's Estate,* 267 Pa. 462, 110 A. 90; *Blair et al., v. Shannon et al.,* 349 Pa. 550, 37 A. 2d 563. A *general* legacy is not liable to ademption. In case of a general legacy of stocks or bonds, if none are owned by testator at the time of death, the legatee may elect to take the value in cash or have the fiduciary purchase them for him: *Sponsler's Appeal,* 107 Pa. 95; *Snyder's Estate,* 217 Pa. 71, 66 A. 157; *Estate of James McGaw, Deceased,* 85 Pa. Superior Ct. 545.

A legacy is presumed to be general rather than specific: *Blackstone v. Blackstone,* 3 Watts 335; *Ludlam's Estate,* 13 Pa. 187; *Balliet's Appeal,* 14 Pa. 451; *Ferreck's Estate,* 241 Pa. 340, 88 A. 505; *Lenhart's Estate,* 344 Pa. 358, 25 A. 2d 725; *Estate of James McGaw, Deceased,* 85 Pa. Superior Ct. 545; *Connolly Estate,* 166 Pa. Superior Ct. 383, 71 A. 2d 856.

A legacy *lapses* when the legatee dies in the lifetime of testator: *Comfort v. Mather,* 2 W. & S. 450; *Berger Estate,* 360 Pa. 366, 371, 61 A. 2d 855. But a devise or legacy in favor of a child or lineal descendant of testator does *not* lapse where such devisee or legatee leaves issue surviving: Sec. 15 (a) Act of June 7, 1917 P. L. 403, 20 PS 251. Where testator leaves no lineal descendants who would receive the benefit of lapsed or void devises or legacies, no devise or legacy in favor of a *brother* or *sister* or their *children* lapses if such de-

visee or legatee shall leave issue *surviving testator:* Sec. 15 (b) Act of June 7, 1917, P. L. 403, 20 PS 252; *Desh's Estate,* 321 Pa. 286, 184 A. 111.

Appeals Nos. 140, 141 and 142 are by Ruth McFerren Roof, Virginia Ulrich and Mildred McFerren, respectively, three of the residuary legatees. The appeals are identical. By item 18 of the will testatrix bequeathed to Rose Reynolds "one $5000.00 4% Treasury Note." A similar legacy was given to Corinne Reynolds by item 19. In item 21 Edward H. Walters was bequeathed (a) "One $1000.00 4% Treasury Note . . . and (c) Thirty (30) Shares Armour & Company 7% Preferred Stock."

According to the stipulation of facts, at the date of testatrix's death ". . . there were no 4% United States Treasury Bonds outstanding nor have any been issued since that date." All the 7% cumulative guaranteed preferred stock of Armour and Company, owned by testatrix, had been redeemed by the corporation and no such stock was outstanding at date of death nor have any securities of like description been issued since. Appellants earnestly contend that the legacies, even though general, adeemed because there is no recognizable *res* or thing upon which the words of the gift can fasten. There is no merit in this contention. In the case of a general legacy of stocks or bonds, where there are none owned by testator at death, the legatee may elect to take the value in cash *or have the executor purchase them for him: Sponsler's Appeal,* 107 Pa. 95; *Snyder's Estate,* 217 Pa. 71, 66 A. 157; *Estate of James McGaw, Deceased,* 85 Pa. Superior Ct. 545. *In Sponsler's Appeal,* supra, 30 shares of railroad stock were bequeathed by a *general* legacy. At the death testator had but 15 shares. The 15 shares were awarded to the legatee and also *"the cash value of fifteen additional shares."* It is argued by appellants that in the cited cases the executor could have gone into the market and purchased the same kind of stock, and hence was able to estab-

lish a market value. A beneficiary under a *general* legacy will not lose the cash value of his legacy because the executor is unable to purchase similar securities at the date of death. Mere difficulty in ascertaining the cash value of the *thing bequeathed* will not defeat the gift. When a defined article is bequeathed its *value* may become a matter of ascertainment of testamentary intent *at the date of the will: Willing's Estate,* infra. Cf. *Farmers Trust Company, Executor, v. Wilson et ux.,* infra. President Judge Boyle correctly ruled that the present legacies being *general,* the legatees are entitled to receive in cash the value of the securities with interest. These appeals are dismissed at appellants' cost.

Appeals Nos. 144 and 145 are by Edna Reynolds Mc-Caulley and Edward H. Walters. The former was bequeathed "Fifty (50) Shares Cheseborough Manufacturing Company Common Stock" by item 20 of the will, while the latter received a similar bequest under item 21.

Testatrix at the time of the execution of her will was the owner of the 100 such shares but between that date and the date of her death exchanged the 100 shares of the par value of $25 for 250 shares of the same company of the par of $10. This was because of the corporation's revision of its capitalization merely by way of a "split up". It authorized and issued $2\frac{1}{2}$ shares of new common stock for each share of old common stock. Testatrix thereafter held 250 shares @ $10.00 par a share in lieu of her former holding of 100 shares @ $25.00 par a share. No new capital was added and no new shares were purchased. The value of the investment in the corporation remained unchanged. The legacies are conceded to be *general* and not specific.

The court below ruled that because a will is construed to speak and take effect as if executed immediately before the death ". . . *unless a contrary intention shall appear by the will"*, (Sec. 9 of Wills Act of June

7, 1917 P. L. 403, 20 PS 221) the bequest of 50 shares of stock referred to 50 shares of the *exchanged stock* of the par value of $10.00. With this we do not agree. As the legacies were unquestionably *general,* the legatee is entitled to the stock or its value as contemplated *at the date of the will: Willing's Estate,* 292 Pa. 51, 140 A. 558; *Farmers Trust Company, Executor, v. Wilson et ux.,* 361 Pa. 43, 46, 63 A. 2d 14. The legacies were not adeemed merely because of a change in corporate *form.* The change was clearly one of form and not of substance. While the will is only effective at death, the *intent* of the testator governs concerning the identity or value of the legacy. This is governed by the words of the will in relation to the surrounding circumstances: *Miller's Estate,* 323 Pa. 9, 13, 186 A. 99; *Jackson's Estate,* 337 Pa. 561, 12 A. 2d 338; *Clark Estate,* 359 Pa. 411, 59 A. 2d 109; *Shober Estate,* 364 Pa. 321, 72 A. 2d 113. What the testatrix manifestly intended to bequeath to each legatee was 50 shares of the common stock of the corporation which she *then* owned. Such a change of form, but not of substance, will not defeat a manifest testamentary intent to bequeath to each legatee, by way of a *general* legacy, an equal one half share of the stock which she *then* owned in that corporation.

Appeals Nos. 144 and 145 are sustained and decree reversed, with direction to modify awards in accordance with this opinion, the costs to be paid out of the principal of the estate.

Appeals Nos. 188, 189 and 190 relate to questions of *lapsed legacies.* Testatrix by her will bequeathed legacies to fifteen nieces, nephews, grand niece, grand nephew and cousins of herself and her deceased husband. The residue is bequeathed to 8 of the 15 legatees, with no distinction made between her relatives and those of her husband. Of the four legacies where a lapse is directed, two of the legatees were nieces or

nephews (children of deceased brothers or sisters) *whose legacies would have been saved by the Wills Act in the absence of such a testamentary provision.* The remaining two bequests, where lapse was directed, would *not* have been saved by statute. Appellants in these appeals, who are descendants of persons whose legacies have lapsed, contend that because the will directs lapses in four of the fifteen legacies, this is evidence of the testator's intention that all *other* legacies should *not* lapse. The learned court below rejected this contention. With this we agree.

It would be merely a matter of conjecture to attempt to seek the reason for testatrix's provisions concerning lapses. To surmise, because of testamentary provisions as to lapses in four legacies, testatrix intended that the other eleven legacies should *not* lapse is not tenable. As Mr. Justice JONES said in *Farmers Trust Company, Executor, v. Wilson et ux.,* 361 Pa. 43, 46, 63 A. 2d 14: "In Weidman's Appeal, 2 Walker 359, 361, 42 Leg. Int. 338 (1885), Mr. Justice TRUNKEY quoted with approval for this court to the effect that 'The question in expounding a will is not what the testator meant, but what is the meaning of his words.' That pronouncement has since been reiterated by the courts of this State many times without question down to the present: e. g., Myers Estate, 351 Pa. 472, 474, 41 A. 2d 570; Rosengarten Estate, 349 Pa. 32, 38, 36 A. 2d 310; Brock Estate, 156 Pa. Superior Ct. 616, 619, 41 A. 2d 347; Tombs Estate, 155 Pa. Superior Ct. 605, 609, 39 A. 2d 367; etc. The principle, of course, does not mean that, where a testator's intention is clear, it may be disregarded on the basis of a literal interpretation of his testamentary words. But, it does mean that a testator's intent is not to be arrived at by the expounder's subjective deductions as to what the testator might have meant, or even perhaps did mean, but did not say: cf. Ludwick's Estate, 269 Pa. 365, 371, 112 A.

543. The scope of the inquiry is limited to the meaning of what the testatrix said."

Appeals Nos. 188, 189 and 190 are dismissed at the cost of appellants.

The definitive decree of distribution, as modified, is affirmed. Costs to be paid in the respective appeals as herein directed.

Mr. Justice HORACE STERN dissents in Appeals Nos. 140, 141 and 142, being of opinion that, since the securities there involved were wholly out of existence at the time of testatrix's death and no others of their kind then existed, the legacies were adeemed.