## Henninger Estate

*Karl Y. Donecker*, for accountants.

GEARHART, P. J., November 1, 1951.—Testatrix bequeathed her dinner set to Mrs. Irene Saylor; her furniture and household goods to Rev. George D. MacNeal, and a $1,000 bond to Rev. Robert A. Laubach. In addition, in item 4 of her will she devised real estate. Item 4, which presents a problem of interpretation, provides:

"I give, devise and bequeath unto the Evangelical and Reformed Congregation, who hold their services in the Union Church known as Morganland Church building, located in Lowhill Township, Lehigh County, Pennsylvania, its successors and assigns for ever, my home located at No. 25 N. Glenwood Avenue, Greena-

walds, Lehigh County, Pennsylvania, which home shall be used as a Parsonage for the Ministers preaching at the Evangelical and Reformed Church, at Morganland Church, Lowhill Township, Lehigh County, Penna., and for the Minister preaching at the Evangelical and Reformed Church, located in Cetronia, Lehigh County, Penna. They shall maintain said premises at all times in good and respectable conditions. At no time shall the aforesaid premises be sold by the Evangelical and Reformed Congregation, located in the Union Church building known as Morganland Church aforesaid."

This awkward devise immediately raises the practical question as to who is to maintain the premises in good and respectable condition; who is to pay for capital improvements which we are informed are now necessary, and who is to pay the transfer inheritance tax on the gift.

Both churches referred to in paragraph 4 are union churches composed of Evangelical and Reformed and Lutheran congregations. It seems reasonably clear that the gift is limited to the Evangelical and Reformed congregations. At any rate, the Lutheran congregations have made no claim that they be included in the gift.

The Evangelical and Reformed congregation located in Cetronia is known as "Cedar", and the other congregation located in Lowhill Township, Lehigh County, is known as "Morganland". The two now constitute, and at the time of the execution of the will constituted, one charge known as the "Cedar-Morganland charge". Rev. George D. MacNeal is the Reformed minister for both congregations. He is the residuary legatee under the will. For sometime prior to the death of testatrix, Reverend MacNeal roomed at her home. The rental for the portion of the premises occupied by Reverend Mac-

Neal was paid jointly by the Cedar-Morganland congregations.

In the instant case the intent of testatrix as gathered from the language used is not clear. Therefore, a consideration of all the circumstances surrounding testatrix when she wrote the will is helpful in ascertaining her intent. It is for this reason that we have recited the above facts.

It takes no gift of prophecy to opine that sometime in the future a change will take place with respect to the status of these congregations. We are informed that no change in the present set-up is contemplated. Nonetheless, the record shows that realignments and separations of charges are continually taking place within the Lehigh synod, of which this charge is a member. Future circumstances, not now foreseeable, might make a separation a practical necessity. If this should take place, each congregation would have a separate minister.

The two congregations are not now disputatious. We are informed by counsel that both are grateful to testatrix for her substantial gift. But what does give them concern is to know what are their respective rights and obligations in the premises.

Two interpretations of paragraph 4 are possible. One is that the gift was to Morganland absolutely and that the beneficial interest of Cedar is merely incidental as long as both Cedar and Morganland constitute one charge and have one and the same minister, and that if and when the Cedar and Morganland congregations no longer constitute a single charge, then the beneficial interest of Cedar will cease. If that is the correct interpretation, it would logically follow that the transfer inheritance tax and all capital improvements and maintenance of the property should be paid for by Morganland without reimbursement from Cedar.

On the other hand, if the gift was to Morganland merely as a trustee for the equal benefit and use of both congregations, then both congregations should share in the payment of the transfer inheritance tax, capital improvements, and maintenance.

It is well settled that in determining the intention of testator, the expounder of the will should look to the four corners of the will. Examining the will with these principles in mind, we find that testatrix specifically states that the "home shall be used as a parsonage for the Ministers preaching" at the Morganland church and ". . . for the Minister preaching at the Evangelical and Reformed Church, located in Cetronia." It is thus clear that she gave a beneficial use to the two congregations. It would seem that if testatrix had intended that Cedar's interest should be incidental and merely temporary, there would have been no need to refer to the Cedar congregation at all. This for the reason that the Cedar congregation would have benefited so long as the two congregations continued to have the same minister.

Moreover, in the sentence that immediately follows the reference to the minister preaching at the Cedar church, testatrix says: "They shall maintain said premises at all times in good and respectable conditions." Having referred to the two congregations by name, we are of the opinion that "they" refers to the two congregations. We have already stated that at the time testatrix wrote the will, both congregations were paying for the minister's rooms in the home of decedent. It seems that both congregations, having been given equal and similar uses and benefits in the property, should carry the burden jointly. Hence, testatrix's reference that "they" shall maintain, etc.

It is true that in the early part of item 4 the legal title is vested in the Evangelical and Reformed congregation, which holds services in the Morganland

church. It is also true that testatrix has not designated the congregation as trustee, but from what she has stated immediately thereafter, and to which we have adverted, it would seem that her intention was that the Morganland congregation should hold the legal title as trustee for the equal benefit and use of both the Cedar and the Morganland congregations. The context of the will implies a trust, since the benefit to be derived from the gift is in favor of both churches.

In Schuldt v. Reading Trust Co. et al., 270 Pa. 360, 363, it was stated:

"No special form of words is required to create a trust; 'the manner in which a trust is imposed is not material if the intention can be clearly gathered from the will'; and the fact that the word 'trust' is not used is in no sense controlling: Cooper's Est., supra, 584; Steinmetz's Est., 168 Pa. 171, 174."

In Weidman's Appeal, 2 Walker 359, 361, Mr. Justice Trunkey, writing the opinion of the court, stated with respect to the interpretation of the will: "The question in expounding a will is not what the testator meant, but what is the meaning of his words." Said Mr. Justice Jones, referring to the quotation in Farmers Trust Company v. Wilson et ux., 361 Pa. 43, 46, 47:

"That pronouncement has since been reiterated by the courts of this State many times without question down to the present . . . [citing cases] The principle, of course, does not mean that, where a testator's intention is clear, it may be disregarded on the basis of a literal interpretation of his testamentary words. But, it does mean that a testator's intent is not to be arrived at by the expounder's subjective deductions as to what the testator might have meant, or even perhaps did mean, but did not say: Ludwick's Estate, 269 Pa. 365, 371. . . ."

What testatrix did state and indicate very clearly was that the home should be used as a parsonage "for the Minister preaching at the Evangelical and Reformed Church, located in Cetronia." And since the scope of our inquiry is limited to the meaning of what testatrix said (McFerren Est., 365 Pa. 490, 497, 498), it follows that the gift of the house by testatrix was for the equal benefit and enjoyment of both churches. And likewise, she apparently recognized the equitable principle that he who receives the benefit should also carry the burden, for she states that "they" shall maintain the premises, etc.