# McClarren's Estate.

*Wills—Conversion—Power to sell—Re-conversion—Judgment against legatee—Priority.*

1. Where a testator devises his homestead to his wife for life, and then directs "that the same be sold by my administrator, at private or public sale, and that the proceeds arising therefrom be equally divided between my two sons share and share alike, after her death," and also directs that the "residue of moneys from the sale of my real estate, other than that allotted to my wife's occupation and use," shall "be divided in equal shares between my two sons," and finally directs his administrator "to sell and convey by deed or deeds my real estate in accordance with the foregoing," the will works an equitable conversion of all the testator's real estate into personalty.

2. Where a power of sale in a will works an absolute conversion of testator's realty, and after the death of the testator the beneficiaries work a re-conversion, judgments entered against one of the beneficiaries prior to the date of the re-conversion have no lien upon the land as against judgments entered against the beneficiary after the re-conversion.

3. Where a power of sale in a will works an absolute conversion of realty, the proceeds of which are to be distributed to testator's sons, and the executor sells personal property and files an account of the proceeds thereof, a release given by the sons to the executor will not work a re-conversion of the realty, where it appears that the release merely waived the appointment of an auditor and acknowledged receipt of the fund, and that its purpose was merely to save the expense of distribution through the Orphans' Court.

4. In such a case where the executor sells lands in pursuance of the power in the will, the fact that the sons join in the deed in order to save trouble and expense of court proceedings does not work a re-conversion of the real estate; but deeds executed by the sons themselves without any connection with the executors, in accordance with a plan of lots, does work a re-conversion.

5. Where a will gives a life estate in real estate to testator's widow, and directs that after her death the real estate shall be sold and the proceeds divided between testator's two sons, the sons will work a re-conversion, if after the widow's death, they take possession of the land in question, and deal with it as real estate.

1913.]     Statement of Facts—Opinion of Court below.

Argued Oct. 10, 1912.   Appeal, No. 183, Oct. T., 1912, by Alexander Heilman, from decree of O. C. Armstrong Co., March T., 1911, No. 14, dismissing exceptions to auditor's report in Estate of P. F. McClarren, deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Affirmed.

Exceptions to report of C. E. Harrington, Esq., auditor.

REED, P. J., specially presiding, filed the following opinion:

This is a contest on distribution between the creditors of George K. McClarren, who is one of the legatees under the will of P. F. McClarren, deceased.  His distributive share of the proceeds of the real estate sold is claimed by his judgment creditors, and the dispute between them is as to the priority of lien of their respective judgments. It is contended that the decedent by his will converted the real estate into personalty, and also that if it were reconverted by the parties in interest prior to its sale the judgments to which the auditor has awarded the fund were entered in the interim and therefore were not liens upon it at the time it was sold.  Hence, the questions for determination are, did the testator by his will convert this real estate into personalty; and, if so, did the parties in interest reconvert it into real estate, and at what date?

P. F. McClarren died, testate, December 21, 1900, leaving to survive him a widow and one daughter and two sons.  The provisions of his will which give rise to this contest are as follows: "I also hereby set aside for my wife's individual use so long as she may live all that portion of my real estate bounded on the South by the public road leading from the Allegheny river by Shoops, on the East by the center of the Allegheny Valley Railway, on the North by a 35 foot street in the plan of lots recently laid out by R. S. Slaymaker, artist, for P. F. McClarren, thence on the West by the Allegheny river;

on which there is now erected two dwelling houses, frame barn, wareroom, office and other buildings; to include so much of the orchard as lies South of the street above referred to; supposed to contain three acres be the same more or less.......

"I will and bequeath to my son Warren Terry McClarren the sum of two thousand dollars to be paid to him out of the proceeds of my estate to make him equal with his sister and brother.

"As to the residue of moneys from the sale of my real estate, other than that allotted to my wife's occupation and use, I direct it to be divided in equal shares between my two sons, George K. and Warren T. or in case of their decease, then to their children.

"As to that portion of my real estate reserved and allotted to her individual use (meaning my wife,) I direct that the same be sold by my administrator, at private or public sale, and that the proceeds arising therefrom be equally divided between my two sons share and share alike after her death.

"I hereby empower my said administrator to sell and convey by deed or deeds my real estate in accordance with the foregoing.

"I hereby declare that my wife shall not be disturbed or annoyed in the peaceable possession of that portion of my real and personal estate herein set apart for her individual use and comfort so long as she shall live."

Subsequently, by codicil, the testator appointed Honorable W. D. Patton executor of the will, who, February 2, 1902, filed his final account of the personal estate, showing a balance for distribution between the widow and two sons of $8,595.48, which balance April 2, 1902, was awarded by agreement of the parties as follows: To the widow, $2,865.16; to W. T. McClarren, $3,865.16, which included the two thousand dollars bequeathed to him "to make him equal with his brother and sister"; and $1,865.16 to George K. McClarren.

The real estate involved in this controversy originally

consisted of a single messuage, part of which the testator
devised to his wife for life. The proceeds of the remain-
ing part, which had been laid out in lots prior to his
death, he devised to his two sons, share and share alike.
The widow died December 12, 1907, and after her death
the executor, December 3, 1910, pursuant to an agree-
ment entered into by all the parties in interest that the
real estate should be sold by him and the proceeds
thereof substituded for the land and distributed to those
entitled thereto without regard to how the sale had
been effected, sold the part devised to the widow for life
for the sum of $8,050, and the part that had been laid
out in lots (except some of the lots which had been pre-
viously sold and conveyed and to which reference is here-
after made) for the sum of $4,600.

It is to be observed that the testator by his will dis-
tinguished his real estate into two parts and this dis-
tinction was recognized and maintained by all the par-
ties in interest in their subsequent dealings with it and
in the sales made thereof after the widow's death. In
my opinion it must be so considered and treated in the
determination of the questions whether one or both of
the pieces were converted into personalty by the will of
the testator, and, if so, whether one or both were subse-
quently reconverted by the beneficiaries and when. The
exceptants contend that it was the intention of the tes-
tator to convert both tracts into personalty, and the
auditor has so found: Severns's Est., 211 Pa. 65; Jones
v. Caldwell, 97 Pa. 42. The controverted questions,
therefore, are whether the beneficiaries subsequently by
their unequivocal acts or declarations elected to take
one or both of these pieces of real estate unconverted,
and, if so, when and how they manifested such election.

As to that part of the real estate laid out in lots and
which the executor was privileged and empowered to sell
immediately after the death of the testator, the benefi-
ciaries clearly evinced a purpose to take the land in lieu
of the proceeds. This election was unequivocally mani-

fested when they accepted it as unconverted and proceeded to sell and convey the lots into which it had been divided. In October, 1901, they sold and conveyed one of these lots to Dennis A. Duff and also one to R. C. McElfresh. The executor and widow of the testator joined in the execution of these deeds, but there is no evidence showing that they received any part of the proceeds of the sale, and the fair inference is that the same were received by Warren T. McClarren and George K. McClarren, the beneficiaries under the will who executed the deeds. The executor in his final account in 1902 charged himself with $224.45 received from Dennis A. Duff and $65.64 received from R. F. McElfresh; but there is nothing to show that these sums were any part of the proceeds of the sales of these lots. If they had been it could have been readily proven, and the burden to so prove was on those who now allege it. There is nothing to show that the executor had anything to do with negotiating the sales of these lots, or that he received any part of the proceeds. The only reasonable inference from the facts and circumstances in evidence is that the sales were made by the beneficiaries, Warren T. McClarren and George K. McClarren, and that the proceeds of the same were received by them. The joining of the executor and widow in the execution of the deeds was perfunctory, and no doubt was done at the instance of the purchasers to remove any question in their minds about the title they were acquiring. It appears that one of the lots in this plan of lots had been sold to James W. Lockhart in the testator's lifetime, and after his death the widow, executor, and Warren T. McClarren and George K. McClarren, August 7, 1901, joined in executing and delivering a deed to Lockhart for the same. From this it is argued that the deeds executed by the same parties to Dennis A. Duff and R. C. McElfresh were for lots sold by the testator in his lifetime. This contention, however, is answered by the rule of non sequitur. If such were the fact it could have and should

have been proven. It is significant that in the deed to Lockhart it is recited that the lot therein described is "the same lot sold by P. F. McClarren (the testator) to the said James W. Lockhart by Article of Agreement dated 23d day of September, A. D. 1899." The deeds to Duff and McElfresh were made about the same time as the deed to Lockhart, but contain no such recital.

As already stated, the executor filed his final account of the personal estate February 3, 1902, showing a balance in his hands for distribution of $8,595.48, which was amicably distributed between the widow and Warren T. McClarren and George K. McClarren, who, April 2, 1902, receipted for their distributive shares and executed a release and discharge of the executor "with the same force and effect as if the said balance had been distributed by the Orphans' Court of Armstrong County." This practically severed the executor's connection with the estate. He never exercised or offered to exercise any power or authority conferred upon him by the will in reference to the testator's real estate. About three years after the widow's death, under and pursuant to the agreement herein before referred to, he sold the real estate devised to her for life for $8,050, and the remaining lots of that part of the real estate that had been laid out in lots for $4,600. After the executor had filed his account of the personal estate the beneficiaries of the real estate continued to deal with the tract comprising the plan of lots as unconverted, thereby confirming their prior election to accept it as real estate instead of the proceeds thereof. They sold a number of lots and executed and delivered deeds to purchasers, and in various other ways set out by auditor in his report indicated their prior election to take this real estate as land instead of money. Assuming that the will converted this part of the testator's real estate into personalty, the beneficiaries reconverted it into real estate as early as October, 1901, when they sold a part of the same and executed and delivered deeds to the purchasers therefor:

## 226 McCLARREN'S ESTATE.

Smith v. Starr, 3 Wharton (Pa.) 62; McGarry v. Mc-Garry, 9 Pa. Superior Ct. 71; Howell v. Mellon, 189 Pa. 169; Brandon v. McKinney, 233 Pa. 481. From the time of the sale of the first lot in October, 1901, down to the final sale of the remaining lots in 1910 all the joint and several acts of the beneficiaries clearly and unequivocally indicated their election to hold this real estate as such. It is disputed that the testator by his will converted this part of the real estate into personalty, but inasmuch as the beneficiaries reconverted it into realty as of the date of October,......, 1901, the distribution of the proceeds of sale is not affected if it be granted that the will did convert it into personalty.

As to that part of the real estate devised to the widow for life, there is no evidence whatsoever of any act or declaration by the beneficiaries prior to her death, to indicate an election on their part to hold the same as real estate. A few days after her death they did so elect by taking possession of it and leasing it, collecting the rents and dividing the same equally between them after paying thereout the taxes assessed on both tracts and the insurance on buildings on this particular tract. After her death December 15, 1907, they assumed absolute control and dominion over this part of the real estate and treated and dealt with it as such until it was sold pursuant to the agreement herein referred to. The testator positively and explicitly directs this part of his real estate to be sold after the death of his widow and the proceeds arising from such sale to be equally divided between his two sons. This worked a conversion of it into personalty: Parkinson's App., 32 Pa. 455; McClure's App., 72 Pa. 414; Jones v. Caldwell, 97 Pa. 42. It remained personalty until reconverted into realty by the beneficiaries after the death of the widow, which reconversion took place December 15, 1907.

The auditor in his disposition of the case reached the conclusion that the testator intended to convert all his real estate into personalty and to bequeath the proceeds

as money, but that the beneficiaries elected to take such real estate as such in lieu of the proceeds, and that this election was made as to all of the real estate at a date preceding the entry of the judgments of Alex. Hileman and Mary Montgomery, et al., which were entered on the same day, namely October 18, 1902. He found George K. McClarren's net share of the proceeds of sale to be $5,696.92, and awarded to Alex. Hileman and Mary Montgomery, et al., $3,447.60 in full payment of the debt, interest, costs and attorneys' commission of their respective judgments; and the balance of said distributive share, $2,249.32, he awarded to judgments of W. D. Patton. There have been a large number of exceptions filed to the auditor's findings of fact and conclusions of law, but the only substantial error discovered by the court is in his failure to distinguish between the two parcels of real estate regarding the respective dates when the beneficiaries elected to take and hold the same as real estate in lieu of the proceeds thereof bequeathed to them.

From the testimony and records submitted I am unable to make the distribution and can only indicate my opinion as to how it should be made and refer the case back to the auditor to make the same in accordance therewith. For his information I may say that one-half of the proceeds of the sale of that part of the real estate comprising the plan of lots, less one-half of the expenses of the sale and the costs of the audit, leaving the net balance, as near as I can determine from the data at hand, $1,985.97, should be distributed pro rata to the judgments of Alex. Hileman and Mary Montgomery, et al., which were entered on the same day, October 18, 1902. "These judgments never became liens on that part of the real estate devised to the widow for life. When they were entered this real estate in contemplation of law was personalty, and, while writs of scire facias thereon were issued, judgments on these writs were not taken and entered until after the real estate had been sold.

Inasmuch as the real estate devised to the widow for life remained personalty until after her death, the one-half of the proceeds of its sale, less one-half of the expenses of the sale and the costs of the audit, leaving the net balance, as near as I can determine, $3,710.96, should be awarded to those judgments that became liens after its reconversion, to-wit, December 15, 1907, according to priority, subject, however, to the assignment by George K. McClarren to Honorable W. D. Patton of his interest in the estate to secure the payment of his indebtedness to him; and the balance remaining, if any, to the attaching creditors as their respective rights thereto may appear.

It is earnestly maintained, however, that a reconversion of the real estate divided into lots did not take place in October, 1901, when the two beneficiaries joined with the executor and widow in executing and delivering deeds to Dennis A. Duff and R. C. McElfresh for lots Nos. 37 and 38, for the reason that these conveyances were for the purpose of executing contracts made for the sale of these lots by the testator in his lifetime. If this were an established fact this contention would seem to be correct: Foster v. Harris, 10 Pa. 457; Longwell v. Bentley, 23 Pa. 99; Leiper's App., 35 Pa. 420; Bender v. Luckenbach, 162 Pa. 18. In that event the reconversion was effected June 26, 1905, when the beneficiaries sold and conveyed to C. C. Fiscus lot No. 3, instead of October, 1901, as hereinbefore stated. This change in the date when the reconversion was effected would materially affect the distribution of the proceeds of sale of this real estate. Instead of the judgments of Alex. Hileman and Mary Montgomery, et al., being entitled thereto, the same would have to be awarded to the judgments of Honorable W. D. Patton as the first liens upon the real estate after the beneficiaries elected to take it as such instead of the proceeds thereof: Roland v. Miller, 100 Pa. 47; Brolasky v. Gally, 51 Pa. 509; Ross's App., 106 Pa. 82; Burr v. Sim, 1 Wharton (Pa.) 252; Simpson v.

Kelson, 8 Watts 247; Meily v. Wood, 71 Pa. 488; Brandon v. McKinney, 233 Pa. 481. Since it has become necessary to refer the case back to the auditor to make distribution in accordance with the views of the court herein expressed, and inasmuch as it is possible that the deeds to Dennis A. Duff and R. C. McElfresh were made and delivered for the purpose of consummating sales made by the testator, the auditor is authorized and directed, if the parties in interest so desire, to grant a further hearing in relation thereto for the purpose of determining the real character of those transactions.

And now, April 24th, 1912, so far as the exceptions filed to the auditor's report conflict with the views of the court they are dismissed, and so far as they harmonize therewith they are sustained; and the report is referred back to the auditor to make distribution of George K. McClarren's distributive share of the proceeds of sales of the real estate of P. F. McClarren, deceased, in accordance with this opinion.

On exceptions to the auditor's supplemental opinion, REED, P. J., filed the following opinion:

This case is now before the court on exceptions to the supplemental report filed by the auditor. The original report was referred back to him to make distribution in accordance with the opinion of the court on the exceptions filed thereto and also for further consideration by him of the question raised as to the nature and effect of the deeds made by the executor and the widow and legatees of the testator and delivered to Dennis A. Duff and R. C. McElfresh for lots Nos. 37 and 38. These deeds were made and delivered in 1901 and were held by the court to manifest a clear and unequivocal intention on the part of the legatees to take the real estate of which they were a part in its unconverted state. It was contended, however, by judgment creditors of George K. McClarren, one of the legatees, that these deeds were made in pursuance of sales by the testator in his lifetime on articles of agreement and therefore could not be given

the effect of working a reconversion of this part of the testator's real estate which by his will he had converted into personalty. The court indicated in the opinion filed that if the auditor should find that these deeds were executed and delivered in consummation of sales made by the testator, and from the testimony offered on the reference of this question to him he has so found, the reconversion of the real estate of which these lots were a part was not effected until June, 1905, when the legatees in their own right sold and conveyed certain of these lots and thereby clearly and unequivocally expressed their intention to take this real estate in its unconverted state. This change in the date when the reconversion was effected materially affects the distribution of the proceeds of the sale of this real estate. If the reconversion took place in 1901, then the judgments of Alex. Hileman and Mary Montgomery, et al., became the first liens thereon and would be entitled to the proceeds of the sale; but if it did not take place until 1905, the judgments of other creditors became the first liens thereon and would take the proceeds.

The testator devised a part of his real estate to his widow for life, with direction to sell the same after her death and to divide the proceeds between his two sons, Warren T. McClarren and George K. McClarren share and share alike, and bequeathed the "residue of moneys accruing from the sale of his real estate" other than that devised to his wife for life to his said sons in equal shares, and authorized and empowered his executor to sell and convey the real estate in executing and carrying out the provisions of his will.

The auditor has found that the testator by his will converted all his real estate into personalty and bequeathed the proceeds to his two sons share and share alike; and in this finding the court concurs. None of the parties in interest in their arguments before the court has questioned the correctness of this conclusion. The parties are likewise unanimous in their approval of the

auditor's finding that a reconversion was subsequently effected by the legatees. The sole controversy between them is, when was this reconversion effected. The auditor was of the opinion that it took place shortly after the testator's death or at least prior to the time of the entry of the Hileman and Montgomery judgments, October 18, 1902, and made no distinction between that part of the real estate laid out into lots which the executor was empowered to sell forthwith and to divide the proceeds in equal shares between his two sons and that part devised to his widow for life with direction to sell after her death and to divide the proceeds thereof between said sons share and share alike. In the opinion of the court this conclusion of the auditor was not sustained by the evidence or the law applicable thereto. In his supplemental report the auditor still adheres to his original opinion on this question, but, constrained by the views of the court, he finds that the reconversion of that part of the real estate laid out into lots took place in June, 1905, and of that part devised to the widow for life in December, 1907; and in these findings the court concurs. The auditor in support of his views cites Yerkes v. Yerkes, 200 Pa. 419, and Painter v. Painter, 220 Pa. 82; but he apparently overlooks the fact that the question is not when does a conversion take place, but how is a reconversion effected. The executor could not, by anything he might do or say, work a reconversion. Neither could the legatees by their several and independent acts or declarations effect this result. 4. (The declarations or acts which would work a reconversion must be joined in by all the parties in interest, and they must be unequivocal acts or declarations clearly manifesting an intention of all the legatees of the proceeds to take the land in lieu thereof. It is impossible to deduce such intention from the administration account of the personal estate filed by the executor, or from the amicable distribution of the balance thereby shown to be in his hands, or from the receipt of the widow and legatees of their

respective distributive shares and the release and discharge of the executor in pursuance thereof with the same force and effect as if this balance had been distributed by the Orphans' Court, or from all these acts and declarations combined. There is absolutely nothing in these acts and declarations, considered singly or together, to indicate an election on the part of the legatees to take the land in lieu of the proceeds bequeathed to them.)

Prior to June, 1905, there is not a syllable of testimony that these legatees took possession of this real estate or that they rented it or paid taxes on it or in any other way exercised acts of ownership over it to indicate an intention on their part to take the same as land. From a careful reading of the testimony the first indication by either of the legatees of an intention to take the land in its unconverted condition was when George K. McClarren, October 18, 1904, executed and delivered to Alexander Hileman a power of attorney to make sales of these lots. The intention of George K. McClarren thus manifested was not acquiesced in by the other legatee, Warren T. McClarren, until June 20, 1905, when he joined with Alexander Hileman, attorney in fact for George K. McClarren, in executing and delivering a deed for lot No. 13 in this plan of lots, and a few days later they jointly executed and delivered to C. C. Fiscus a deed for lot No. 3, thereby clearly and unequivocally declaring their intention to take the land in lieu of its proceeds. Regarding that part of the real estate devised to the widow for life, the proceeds of which after her death were bequeathed to these two sons, they had no right to its possession and did not in any manner whatsoever during the lifetime of the widow express an intention to take it in its unconverted state. After her death December 12, 1907, they did, December 15, 1907, take possession of it by their agent, Alexander Hileman, rented the same, received the rent, paid the taxes, paid insurance on the buildings located thereon,

and in other ways manifested a clear and unequivocal intention to take the land in lieu of its proceeds. The auditor, constrained by the views of the court expressed in the opinion on the exceptions filed to his original report, has now found as a fact that the reconversion of that part of the real estate laid out in lots was effected June, 1905, and that the reconversion of that part of the real estate devised to the widow for life was effected in December, 1907; and this finding the court approves. There is absolutely no evidence upon which to base a finding of a reconversion of either of these pieces of real estate at a date earlier than stated in this finding.

In the distribution of the proceeds of sale of these two pieces of real estate it is unnecessary to distinguish the fund into two parts, inasmuch as the same judgments would take the proceeds by virtue of being the first liens thereon if distributed separately. 5. (After awarding so much of the fund as it required to pay the debt, interest and costs of the several judgments secured thereon, there remains a balance of $1,210, which the auditor has awarded pro rata to the judgments of Alex. Hileman and Mary Montgomery, et al. These judgments were not a lien on the real estate at the time of its sale or otherwise secured on the proceeds of sale.) They were entered before the legatees elected to take the land unconverted. Subsequently writs of scire facias were issued upon them, but judgments were not entered on these writs until after the land was sold. 6. (The auditor being of the opinion that the proceeds of sale by agreement of the parties was substituted for the real estate, finds that these judgments, although entered after the sale, became liens upon the proceeds. I am unable to agree with this conclusion of the auditor. The lien of a judgment attaches only to the land, and not to the proceeds of its sale: Hahn v. Smith, 1 P. & W. 484; Homer's Est., 7 Pa. D. R. 63; Snively's Est., 9 Pa. C. C. R. 422; see Hardenburg v. Beecher, 104 Pa. 20. As between creditors the proceeds of this sale were per-

sonal property and would go to the distributee under the will unless he voluntarily parted with his right thereto or the same was seized by execution process against him.)  R. C. Lamberton and Margaret Lamberton, executors, for use of the Franklin Trust Company, obtained a judgment against George K. McClarren, distributee, after the sale of the real estate, and thereupon issued an attachment execution, which was served upon the custodian of the proceeds of the sale of said real estate. The trust company, by virtue of this execution process, claims this balance of $1,210, which the auditor awarded to the judgments of Alex. Hileman and Mary Montgomery, et al., and in the opinion of the court it is entitled to the same and its exceptions to the auditor's supplemental report awarding this balance pro rata to the judgments of Alex. Hileman and Mary Montgomery, et al., are sustained.  The Franklin Trust Company has also excepted to the auditor's charges for services in taking testimony and preparing his supplemental report.  No testimony has been offered to show and the court is not in any way advised how much time was spent by the auditor in taking testimony and preparing his report, and in absence of any information on the subject the court assumes that the auditor's charges do not exceed the compensation allowed him by law, and therefore this exception is dismissed.  "The exceptions filed on behalf of Alex. Hileman and Mary Montgomery, et al., to the auditor's failure to allow full payment of debt, interest and costs of their respective judgments against George K. McClarren, for the reasons stated in this opinion, are severally dismissed, and the balance of $1,210, divided pro rata between these judgments by the auditor is now awarded to the Franklin Trust Company.

*Error assigned* was in dismissing exceptions to auditor's supplemental report.

*H. A. Heilman,* with him *J. H. Painter,* for appellant,

Alexander Heilman.—An examination of the will discloses that the testator, after directing the payment of his funeral expenses, and debts, and a pecuniary legacy to Warren Terry McClarren, uses the following language: "As to the residue of moneys from the sale of my real estate, other than that allotted to my wife's occupation and use, I direct it to be divided in equal shares between my two sons, etc." It will be noted that there is no express direction or order to sell said real estate, except that devised to his wife for life.

While a positive testamentary direction to sell real estate operates as a conversion, it does so only in furtherance of testator's intent, and where it would impede rather than aid such intent no such effect would be given to it: Shedden's Est., 210 Pa. 82; Raleigh's Est., 206 Pa. 451; Yerkes v. Yerkes, 200 Pa. 419.

We submit that the intention and purpose of P. F. McClarren, the testator was to provide a fund to pay his debts and funeral expenses, and the pecuniary legacy to Warren Terry McClarren, and it having been shown that the personal estate, at the death of the testator, was sufficient within itself, to meet all the requirements, the purpose and necessity of the conversion ceased: Fahnestock v. Fahnestock, 152 Pa. 56.

A sale for the payment of debts does not work a conversion: Raleigh's Est., 206 Pa. 451, and Glentworth's Est., 221 Pa. 329; Thompson's Estate, 229 Pa. 542; Muderpaugh's Est., 231 Pa. 376.

The court finds as a matter of law that a reconversion of this property took place on December 20, 1907, at the time of the appointment of Alexander Heilman as the agent to collect the rent, pay the taxes, etc.

The appellant contends that this is only another act upon the part of Warren T. McClarren and Geo. K. McClarren, which shows that they elected to take the land in lieu of the proceeds at some time prior thereto, and for the reasons above stated, the unequivocal act of the parties was the discharge and release of the executor

taken in connection with the execution of the deeds to Dennis A. Duff, R. C. McElfresh and James W. Lockhart.

*H. L. Golden,* with him *Homer R. Blair* and *Eugene Mackey,* for appellee, Franklin Trust Company.—The will of the testator worked a conversion of his real estate into personal property: Fahnestock v. Fahnestock, 152 Pa. 56; Darlington v. Darlington, 160 Pa. 65; Thomman's Est., 161 Pa. 444; Welles's Account, 191 Pa. 239; Reid v. Clendenning, 193 Pa. 406; Keim's Est., 201 Pa. 609; Ramsey v. Ramsey, 226 Pa. 249; Severn's Est., 211 Pa. 65.

The legatees entitled to the proceeds from the sale of the testator's land, reconverted the same into real estate by electing to take the land itself, in lieu of the proceeds from the sale thereof: Miller v. Meetch, 8 Pa. 417; Beatty v. Byers, 18 Pa. 105.

It is a rule that he, who asserts a reconversion, must prove some act or declaration of the legatees which clearly and unequivocally shows an intention to terminate the equitable character impressed upon the land by the testator, in which act or declaration, all the legatees must join: Beatty v. Byers, 18 Pa. 105; Evans' App., 63 Pa. 183; Willing v. Peters, 7 Pa. 287; Bryce's Est., 194 Pa. 135; Rauch's Est., 21 Pa. Superior Ct. 60.

The judgment of the appellant was entered on October 18, 1902; but at that time the conversion under the will was in full operation and the land was personalty, not real estate.

Such a judgment is not a lien: Feather's App., 1 P. & W. 322; Allison v. Wilson, 13 S. & R. 330; Morrow v. Brenizer, 2 Rawle 185; Gray v. Smith, 3 Watts 289; Brolasky v. Gally, 51 Pa. 509; Evans' App., 63 Pa. 183; Jones v. Caldwell, 97 Pa. 42; Roland v. Miller, 100 Pa. 47; Hunter v. Anderson, 152 Pa. 386; Weeter's Est., 21 Pa. Superior Ct. 241.

The case of Brandon v. McKinney, 233 Pa. 481, rules this case.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1913:

In Severn's Estate, 211 Pa. 65, 68, it is said: "We, therefore, have in the will an authority given to the executrix to sell and a direction to divide the proceeds of the sale in equal shares among the three legatees. In order to carry out the provisions of the will and make that distribution of the proceeds of the property, a sale of the real estate becomes imperative and is an absolute necessity. This, as appears from the authorities cited above, meets the requirements of our cases and operates as an equitable conversion."

Applying this doctrine, sustained by all the cases, to the case in hand, it is clear that the will of P. F. McClarren worked a conversion of all his real estate. It is manifest that it was the testator's intention that his two sons should receive the proceeds of the sale of both pieces of real estate, and not the land itself. He devised the homestead to his wife for life, and then directs "that the same be sold by my administrator, at private or public sale, and that the proceeds arising therefrom be equally divided between my two sons share and share alike after her death." Here are two of the essential requisites of an equitable conversion: a positive direction to sell, and an absolute necessity to sell in order to execute the will. As to the other part of his real estate, known as the "McClarren Plan of Lots," the will provides as follows: "As to the residue of moneys from the sale of my real estate, other than that allotted to my wife's occupation and use, I direct it to be divided in equal shares between my two sons, George K. and Warren T., or in case of their decease, then to their children." This is a positive direction to divide the proceeds of and not the real estate itself between the two sons, and while there is no express direction to sell, there is an absolute necessity to sell to accomplish the

purpose of the testator; and that works a conversion: Fahnestock v. Fahnestock, 152 Pa. 56. But there is another clause in the will which not only discloses an intention on the part of the testator that his real estate shall be sold for the purposes of distribution, but also empowers his personal representative to make the sale. It is subsequent to the provisions directing the proceeds of the land to be divided between his sons and is as follows: "I hereby empower my said administrator to sell and convey by deed or deeds my real estate in accordance with the foregoing." The power of sale contained in this provision applies to both pieces of real estate, and read in connection with the item of the will directing the division of the proceeds of the plan of lots operates as a conversion of that part of the testator's land: Roland v. Miller, 100 Pa. 47.

The appellant concedes that if there was a conversion of the real estate under the terms of the will, and we so hold, there was a reconversion, but he and the appellee disagree as to the date of the reconversion. The appellant contends that it occurred on April 2, 1902, the date of the execution of the release and discharge of the executor, or when the legatees joined in the execution of certain deeds, and that as his judgment was entered on October 18, 1902, it was the first lien and should be paid out of the proceeds of the sale of the real estate. The appellee claims and the court below found that reconversion took place as to the plan of lots in June, 1905, and as to the real estate held by the widow for life it took place after her death in December, 1907. It was accordingly held by the learned trial court that the appellant's judgment having been entered prior to the reconversion it was not a lien on the real estate and was postponed to the lien of the judgments entered subsequent to the reconversion.

We think it clear that the release executed and delivered to the executor by the parties entitled under the will was not an act by them disclosing an intention

to reconvert the real estate. The appellant misconceives the purpose as well as the effect of the release. The executor had filed his account of the administration of the personal estate showing a balance in his hands for distribution. The release waived the appointment of an auditor, agreed to distribution, acknowledged the receipt of the amount due from the personal estate, and released and discharged the executor, "with the same force and effect as if the said balance had been distributed by the Orphans' Court of Armstrong County." The purpose of the release, as is apparent, was simply to save the time and expense of a distribution of the personalty by the Orphans' Court. It did not relate to or affect the real estate, nor did it release the executor from his duty to sell the real estate or show an intention on the part of the legatees to accept the land in place of the proceeds of a sale.

The execution of the deeds to Lockhart, Duff and McElfresh by the legatees was not an act of reconversion. They were sales by the decedent and the deeds were executed by the executor to carry out the testator's contracts. The widow and legatees joined in executing the deeds, as found by the auditor and the court, to save the trouble and expense of a proceeding in court for specific performance. The lots having been sold by the testator, his legatees through the executor, were entitled to the purchase money and not to the real estate.

The learned court below properly found that the first indication by the legatees to take the plan of lots as land was the execution and delivery of a deed to a purchaser of one of the lots in June, 1905. A few days later they executed and delivered a deed for another lot. These were acts on the part of the legatees clearly disclosing an intention to reconvert and fixing the date of reconversion. As to the part of the real estate devised to the wife for life, there was nothing to indicate an intention to reconvert until after her death when the legatees took possession and dealt with it as real estate. The action

of the court below on this branch of the case is sustained by the recent decision in Brandon v. McKinney, 233 Pa. 481.

The elaborate opinions of the learned court below make unnecessary any further discussion of the points involved in the case.

The decree is affirmed.