## Suppes's Estate.

Argued May 11, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Frank P. Barnhart,* with him *A. Lloyd Adams,* for appellant.

*Morton Meyers,* of *Graham, Yost & Meyers,* for appellees.

PER CURIAM, June 26, 1936:

Sarah E. Suppes, a resident of the City of Johnstown, died December 26, 1927, leaving a will dated November

17, 1921, to which she had appended a codicil, dated the
. . . day of August, 1924. The residuary estate was di-
vided among her five children. A child, Conrad, died
May 23, 1931, and his widow, owner of his one-fifth in-
terest in this estate, petitioned the court below for par-
tition; the remaining four-fifths interests oppose this.

The testatrix, after directing that all her just debts
and funeral expenses be paid and discharged, devised
the homestead to her husband, George P. Suppes, for
life, the remainder to be disposed of as part of her resid-
uary estate. The family residence was not to be sold
during his lifetime without his written consent, but was
to be kept and maintained by her husband as a home for
their children until such time as they married or left
home. She directed that all repairs and taxes necessary
to keep it up, as well as the living expenses of the family,
be paid out of the estate. A daughter, Frances A. Suppes,
was given all household goods, jewelry, etc., but this
property was not to be removed from the homestead dur-
ing the lifetime of the testatrix's husband. The same
daughter and a son, Chauncey, were each to receive three
vacant lots of ground, unless the executors thought it
unwise to give the lots to these children, in which case
they were to receive "property or money" equivalent to
the value of the lots. The income arising from the share
of her daughter, Margaret, was directed to be used by
the executors for her maintenance and support. Her
daughter Frances was to be supported out of the income
"arising from my estate" until married; a similar pro-
vision was made for her son, Chauncey, until twenty-one.
The residuary estate, real, personal and mixed was di-
vided into five equal parts; one part to George, another
to Conrad, a third to Frances, a fourth to the executors
to invest and pay the income for the support and main-
tenance of Margaret, and the remaining part to the exec-
utors to pay the income to Chauncey, during his life,
but in the event the executors in their discretion believed
he should receive his share of the estate, then "they are

to deliver the same to him." The codicil directed the same executors to "receive, hold, manage, lease and sell all or any part of the share of my daughter, Margaret A. Suppes, in the form of real estate or personal property as it may exist at the time of my death."

The testatrix's estate consisted almost entirely of real estate appraised at $157,000.00; the personal property was valued at $525.00. The decedent's debts amounted to $50,000.00.

The court below stated, "Conversion is always a question of intent, and in order to work a conversion there must be either (1) a positive direction to sell; or (2) an absolute necessity to sell in order to execute the will; or (3) such a blending of real and personal estate by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate and to bequeath the said fund in money. In each of the two latter cases an intent to convert will be implied. *Hunt's and Lehman's Appeal*, 105 Pa. 128, 141; *Dunda's Appeal*, 64 Pa. 325; *Keim's Estate*, 201 Pa. 609; *Stallman's Estate*, 2 D. R. 265. In this estate there is . . . no positive direction to sell. . . . We must therefore determine whether there is an absolute necessity to sell in order to execute the terms of the will, or whether there is such a blending of real and personal estate as to clearly show that it was intended to create a fund out of both and to bequeath the fund as money."

The will directs the payment of decedent's debts and that all repairs and taxes necessary to keep up the homestead, as well as the living expenses of the family, be paid "out of my estate." The personal property, worth only $525.00, was specifically bequeathed. The will, as it relates to the daughter Margaret, directs that the income arising from her share should be used by the executors for her maintenance and support, and that the executors "shall *invest*" the income arising therefrom for the support and maintenance of Margaret. The codicil gives explicit authority to sell either real or personal

388

property to create an income-bearing estate for Margaret. This, together with like instructions as to Frances, a daughter, until marriage, and as to her son, Chauncey, until twenty-one, show that testatrix intended that the real estate should be sold and converted into money in order that there might be some fund to invest for the support and maintenance of her daughter, Margaret, and to carry out the directions with respect to the other children: See *Rambo's Estate*, 266 Pa. 520; *Fahnestock v. Fahnestock*, 152 Pa. 56. The testatrix is presumed to have been aware of the nature of her estate and of the fact that her personal property was entirely insufficient to raise an income sufficient for these purposes: *Mayer's Estate*, 289 Pa. 407, 410. She must, therefore, have intended a conversion to carry out these provisions. It would be impossible to pay the decedent's debts, keep up repairs, pay taxes and the living expenses of her family, and carry out the instructions with relation to the children without a sale of the real estate.

While the court below concluded that the construction placed on the will by the parties, as shown by their acts, estopped them from setting up a claim in opposition to conversion, the will itself definitely calls for conversion. Conversion is always a matter of intention to be gathered from the will. In the instant case such intention is manifested by the provisions of the will discussed above.

They clearly indicate that testatrix treated her estate as an entirety and did not contemplate its division into several parcels of real estate but desired it to be treated as one fund. She knew the character of her property, and it was her intention to place it in liquid condition so her executors could manage it freely. The plan contemplated by the testatrix could not be carried out unless there was a conversion.

The subsequent conduct of the parties is helpful in reënforcing this conclusion although, standing alone, it could not, of course, work a conversion.

Judgment affirmed at appellant's cost.