## Tombs Estate.

606

Argued April 13, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Robbin B. Wolf,* with him *W. I. King,* for appellant.

*Edw. S. Sheinberg,* for appellee.

Opinion by Reno, J., September 27, 1944:

This appeal is from a decree of the court below dismissing appellant's petition for partition of real estate in Allegheny County.

Frank S. Tombs, a widower, died testate on December 15, 1927, leaving four adult children, Ethel A. Henderson, Frank E. Tombs, Charles A. Tombs and Arthur A. Tombs, his sole devisees. The only real estate owned by decedent at the time of his death was that here sought to be partitioned, a lot of ground extending between Bigelow Street and Exeter Alley in Pittsburgh, upon which had been erected a large house fronting on Bigelow Street and a smaller house fronting on Exeter Alley. Ethel, Charles and Arthur occupied the Bigelow Street house together until May 29, 1935, when Ethel married Jesse S. Wickes and removed from the premises. Arthur and Charles, who never married, then occupied the home until Arthur's death on February 10, 1942, and Charles has remained alone in possession continuously thereafter. Frank E. Tombs resided with his family in the Exeter Alley house until September 1, 1936, when he vacated and he has not since returned. After Ethel's withdrawal from the Bigelow Street house, Charles and Arthur, and later Charles alone, rented portions of the property and they pursued the same course with the Exeter Alley premises after Frank had moved away, although no accounting for the amounts collected was ever made.

The original petitioners in this action were Frank E. Tombs and his wife and Ethel Henderson Wickes and her husband, Jesse S. Wickes. The original respondents were Charles A. and Arthur A. Tombs. As a result of deaths during the course of litigation Jesse S. Wickes and Charles A. Tombs have succeeded to whatever interests were originally held by Ethel and Arthur, respectively.

The relevant paragraphs of decedent's will were as follows:

"Second: I hereby direct that all real estate, stocks, bonds and cash in bank or on hand of which I may be possessed, at the time of my death, shall be divided into five equal shares, to be divided as follows: Two shares to go to my daughter, Ethel A. Henderson, and one share to go to each of my three sons, Arthur A. Tombs, Charles A. Tombs and Frank E. Tombs.

"Third: During the continuation of their lives, as long as they remain unmarried, and as long as it may be satisfactory to them, my sons, Arthur A. Tombs and Charles A. Tombs, and my daughter Ethel A. Henderson are to occupy and have full possession of my dwelling house, situate at No. 651 Bigelow Street, in the City, County and State aforesaid, now occupied by me.

"Fourth: During the continuation of the lives of my son, Frank E. Tombs, and the members of his family, and as long as it may be satisfactory to them, they are to occupy and have possession of the house on the rear of aforesaid property on Bigelow Street, as they now do, said house facing on Exeter Alley.

"Fifth: During the occupation of the aforesaid houses as above specified, no rents are to be charged for such occupation, but each one of the said heirs shall pay his or her proportionate share of all taxes, water rents, insurance, repairs, etc., for said property, and if any of them, shall fail to pay his or her share of such expenses, the same shall be charged against his or her share of the estate.

"Eighth: If at any time, a fair price may be obtained for the property above mentioned, or of any other property of which I may be possessed at the time of my death, and the majority of the surviving heirs are in favor of selling the same, such property shall be sold by the executrix, and after the payment of all claims against such property has been made, the remainder of the proceeds shall be divided among the

surviving heirs according to the proportion of their shares in the estate, as set forth herein, but in no case shall the houses on the property aforesaid on Bigelow Street, be sold at separate times, or in such a manner as would cause the sale of one house or portion of the property to be a detriment to the sale of the other house or portion of the property."

The true meaning of these testamentary provisions is not entirely apparent on the surface and in the effort to interpret them it is well to bear in mind certain well established principles as guides to a proper construction of the more obscure passages. Each will is in a sense unique, for the circumstances surrounding each individual testator are themselves unique, and as a consequence the precedent of previously decided cases is often helpful but many times is not controlling. *Williamson's Estate*, 302 Pa. 462, 153 A. 765; *Byrne's Estate*, 320 Pa. 513, 181 A. 500; *Brennan's Estate*, 324 Pa. 410, 188 A. 160. The ultimate objective is to arrive at the intent of the testator as expressed within the four corners of the will, and when ascertained this intention will be carried into effect insofar as it is not in conflict with positive rules of law. *Prime's Petition*, 335 Pa. 218, 6 A. 2d 530; *Elkins' Estate*, 339 Pa. 193, 12 A. 2d 83. Our inquiry is not, however, what the testator meant, but what was the meaning of his words, as the intention must be derived from the language found in the instrument rather than from the phrases which might have been used in their stead. *Scott's Estate*, 313 Pa. 155, 169 A. 73; *Conner's Estate*, 346 Pa. 271, 29 A. 2d 514.

It is well settled that where a will works an equitable conversion of real estate the beneficiaries thereunder have no interest entitling them to demand partition unless they unite in a reconversion and elect to take the land in place of its proceeds. *Brandon v. McKinney*, 233 Pa. 481, 82 A. 764; *Lincoln v. Wakefield*, 237 Pa.

97, 85 A. 133. The learned court below denied relief to appellant on the ground that decedent's will converted his realty into personalty, that the children took no interest in the real estate as such, and that the remedy was a sale by the executrix rather than partition. The cases relied upon to sustain this position do not, however, control the present situation. The provisions of the wills involved in *Severns's Estate (No. 1)*, 211 Pa. 65, 60 A. 492, and *Suppes's Estate*, 322 Pa. 385, 185 A. 616, made it a necessity to sell the real estate in order to carry out the testamentary schemes. In *McClarren's Estate*, 238 Pa. 220, 85 A. 1119, there was a positive direction to sell part of testator's real estate and the proper execution of his will required the sale of the balance of his land and the distribution of its proceeds as personalty. The testatrix in *Battenfeld v. Kline*, 228 Pa. 91, 77 A. 416, blended her real and personal estate into a common mass and bequeathed the fund which was unmistakably intended to be created in the hands of her trustee. In *Marr's Estate*, 240 Pa. 38, 87 A. 621, it was decided that a power "to dispose and settle" testator's estate within five years and to make a division among named relatives did *not* convert the real estate located outside Pennsylvania so as to subject it to the collateral inheritance tax.

The cases cited by the court below are illustrations of and authority for the doctrine that conversion is always a matter of intention to be gathered from the will, and that a conversion is effected only when there is (1) a positive direction to sell; or (2) an absolute necessity to sell in order to execute the dispository scheme; or (3) such a blending of the real and personal estate of the testator as to show clearly that he intended to create a fund out of all his property and to bequeath the fund as money. None of these elements is present in this testator's will. There is no positive direction to

sell; and the order appearing in paragraph two to divide the estate into five equal shares is insufficient to convert the realty. *Oliver's Estate*, 199 Pa. 509, 49 A. 215; *Carter's Estate*, 225 Pa. 355, 74 A. 240; *Dunshee v. Dunshee*, 234 Pa. 550, 83 A. 422. Paragraph eight, it is true, contains a direction of a sort to the executrix to sell, but only upon the happening of three contingencies: (1) a simultaneous sale of both houses, (2) for a fair price, (3) if the majority of the surviving children are in favor of a sale. A direction that a sale be made only if the concurrence and consent of persons other than the personal representative is secured has long been held inadequate to effect an equitable conversion at the death of the testator. *Nagle's Appeal*, 13 Pa. 260; *Sill v. Blaney*, 159 Pa. 264, 28 A. 251; *Irwin v. Patchen*, 164 Pa. 51, 30 A. 436; *Caldwell v. Snyder*, 178 Pa. 420, 35 A. 996; *Scott's Estate*, 37 Pa. Superior Ct. 198. This decedent's will makes no bequest of a fund arising from the blending of his real and personal property, and it cannot be said that there is an absolute necessity to sell in order to effectuate the testamentary purpose. It is manifest that if a sale of the property could not be avoided it was testator's plain intention that the sale should be carried out by the executrix rather than by proceedings in partition, but it is equally clear that a sale of any kind would defeat, instead of execute, testator's dominant design, which was to preserve the family residences for his children so long as that arrangement was satisfactory to a majority of the survivors of them.

Upon decedent's death his children took undivided interests in the fee of his real estate as tenants in common under paragraph two of his will. Wills Act of June 7, 1917, P. L. 403, §12, 20 P.S §224. The subsequent provisions giving them the right to occupy the dwelling houses so long as they lived, so long as they remained unmarried, and so long as satisfactory to

them until a sale was ordered by a majority of the survivors do not reduce the interests of the children to determinable life estates, particularly in view of the fact that there were no limitations over. *Eberle v. Wood,* 304 Pa. 403, 156 A. 95; *Garrett's Estate,* 321 Pa. 74, 183 A. 785. This is not to say, however, that the right to partition, ordinarily incident to tenancies in common, may not have been abridged.

Usually, provisions in a will will be upheld which prohibit or postpone a partition of the estate granted until the happening of a particular event, for the reason that the execution of a will should follow as nearly as may be the course marked out by the testator and partition should not be decreed where he has expressly or by necessary implication provided against it. *Springer v. Savage,* 143 Ill. 301, 32 N. E. 520; *Wells v. Houston,* 56 S. W. 233 (Tex. Civ. App. 1920); *Brookens v. Brookens,* 107 Kan. 140, 190 Pac. 754; *Faudi v. Dobler,* 59 S. W. 2d 798 (Mo. 1933); *Wilson v. Barnes,* 166 Md. 64, 169 A. 791; *Harris v. Harris,* 138 Ore. 243, 6 Pac. 2d 230, 85 A. L. R. 1318, and the cases collated at 85 A. L. R. 1321; 47 C. J., Partition, §119; 40 Am. Jur., Partition, §8; 2 Simes, Future Interests, §449. A qualified restriction upon the right to partition is not the creation of a condition repugnant to the nature of a fee simple estate and hence void as in violation of the rule against restraints on alienation, *(Pattin v. Scott,* 270 Pa. 49, 112 A. 911; *Kepler v. Kepler,* 330 Pa. 441, 199 A. 198) as such a qualification takes nothing from the right of the tenants to convey or devise their undivided interests in the estate. The restriction merely requires beneficiaries who accept a devise to respect the intention of the testator through whom they claim. An actual division of the estate is held in abeyance for a period of time no longer than that which might have been established by a devise in trust (Cf. *Owens v. Naughton,* 23 Pa. Superior Ct. 639) and the mischief

sought to be corrected by the rule forbidding restraints on the alienation of lands is not encountered when there has been erected a mere restraint upon the right to secure an immediate estate in severalty.

From the whole will of Frank S. Tombs there appears his testamentary intention to invest his children with interests in his real estate as such and to provide them with a common place of abode so long as the activities and temperaments of the devisees made practicable the maintenance of family solidarity. Provision was made for the concurrent sale of both houses if the majority of the surviving beneficiaries agreed upon that plan, and by plain implication there was to be no division of the lots, and hence no partition, without the consent of a majority of the survivors. As the testator plainly intended that there be a restriction upon the right to partition if a sufficient proportion of his living children desired to continue their residence in the homestead, and as this intention can be carried into effect without doing violence to established rules of law, the petition for partition was properly dismissed.

Appeal dismissed; appellant to pay the costs.