## Holt Estate

*Carmen V. Marinaro,* for petitioner.

*Galbreath, Bragham, Gregg, Kirkpatrick & Jaffe,* for guardian.

SHUMAKER, P. J., February 24, 1960.—J. Leo Holt, late of Butler Township, Butler County, died on March 5, 1958, leaving an instrument dated January 7, 1944, which was offered for probate in Butler County as and for his last will and testament together with a codicil thereto dated June 17, 1950, which was likewise offered for probate.

Surviving decedent are his widow Phyllis Dittmer Holt and two minor children, Sharon Lee Holt and Georgia Lynne Holt.

The codicil dated June 17, 1950, appointed the Butler Savings and Trust Company as guardian for said children and said guardian has qualified and now appears in this case representing said minors' interests.

The instrument dated January 7, 1944, directed the payment of his debts, inheritance tax and expenses of administration and then provided as follows:

"SECOND: All of the rest, residue and remainder of my estate all of my property whether the same be real, personal or mixed, and wheresoever situate, I give, devise and bequeath to my wife, Phyllis Dittmer Holt, to her, her heirs and assigns."

The will named Phyllis Dittmer Holt as executrix.

Across the instrument dated January 7, 1944, in the handwriting of testator, J. Leo Holt, appears the following at the bottom of the instrument and beside the signatures of the witnesses:

"Sept. 8—1955
I hereby render
this will void and
intend to make one
revised.
J. Leo Holt"

The sole question before the court as simply stated is: "Do the words placed on the will after the execution thereof and signed by the testator 'I hereby render this will void and intend to make one revised' revoke the instrument called the last will and testament of J. Leo Holt?"

It is the contention of the guardian for the minor children that a revocation was effected and that decedent died intestate, thus making the minor children entitled to an undivided two-thirds interest in the estate of their father.

It is the contention of Phyllis Dittmer Holt, the widow, that the writing on the will was ineffective and since testator died not making a "revised will" as he intended, he did not revoke the existing one and, therefore, the widow is entitled to the entire estate of her late husband as his residuary legatee and devisee.

This court under its power of discretion takes jurisdiction in this matter under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, as amended by the Act of April 25, 1935, P. L. 72, and the Act of May 26, 1943, P. L. 645, as amended.

It is the contention of counsel for Mrs. Holt that the writing referred to above, the very subject matter of this controversy, constituted a conditional revocation, that the doctrine now recognized in Pennsylvania of "dependent relevant revocation" applies and that, since testator made no new or revised will, nothing happened to the existing will and that the same was still in effect at the time of testator's death.

Counsel for Mrs. Holt relies heavily upon the case of Braun Estate, 358 Pa. 271, in which a man created a $50,000 testamentary trust in favor of his adopted daughter and later by codicil provided: "I hereby revoke the Trust Fund in favor of my Daughter Mildred, and substitute a lump sum of . . . dollars in cash." In said case the court held that the doctrine of dependent relative revocation is applicable where the dispositive part of the revoking instrument fails because of a defect intrinsic to the instrument in that the bequest which was to be substituted for what the revoking instrument purported to revoke is permitted to remain incomplete. The case further stands for the proposition that the doctrine of dependent relative revocation is a rule of testamentary construction whose use is limited to aiding in the ascertainment of a testator's true intent.

It is the opinion of this court that the doctrine of dependent revocation does not apply to our factual situation and that testator actually revoked his will of January 7, 1944, and, therefore, died intestate.

We start out with the proposition that a will in Pennsylvania may, inter alia, be revoked "by some other writing declaring the same, executed and proved

in the manner required of wills": Wills Act of April 24, 1947, P. L. 89, sec. 5, 20 PS §180.5(2).

The words "some other writing" does not require the use of another or separate piece of paper. It would appear even stronger in establishing intent that testator had before him his will, presumably reread it and then wrote across it or on it, "I hereby render this will void," signing his name thereunder.

Had only these words been written by J. Leo Holt, there can exist no doubt as to the legal consequences of such writing, that he intended to revoke his will and the law would give such words the effect of an absolute, unqualified revocation.

Now what happens by the additional fact that the testator added the words, so troublesome in this case, "and intend to make one revised"?

It would appear to the court that nothing happened. The words were mere surplusage. He revoked his will, and whether he intended sometime later to execute a new will or thereafter abandoned the idea and decided to die intestate matters not.

The court is reminded of the old example: Ten sparrows were on a wire and one took a notion to fly away. How many were left? The answer is 10, one only had a "notion to leave."

In our case, J. Leo Holt, had an "intention to make a revised will" later. It was only an intention on September 8, 1955, when he expressed it.

Certainly, it did not render the absolute revocation a conditional or contingent revocation by expressing his intention.

Counsel for the widow has referred this court to no case where the doctrine of dependent revocation applied to the whole will nor has this court in its research been able to find an appellate court case where such conclusion is reached.

In the Fiduc. Rev., February 1948, page 4, it is stated that:

"If any generalizing principle can be drawn, it is that the dependent relative revocation doctrine will be applied sparingly in Pennsylvania," and that "So far as the appellate cases go, it would seem that to date it has been applied only where the testator revokes a legacy only for the sole purpose of giving the legatee a different gift."

Certainly this was the situation in Braun Estate, supra, on which the widow's contention in our case is based.

The court has been hopeful that dispute in this case could be terminated by settlement which the court could approve. Indeed, we have strongly urged settlement and have afforded counsel ample time to effect same.

Reduced to its common denominator, this is a dispute between a mother and her two minor daughters, her dependents, they being not only the natural recipients of her bounty but her legal responsibilities as well. The mother and the girls were the natural recipients of the bounty of deceased husband and father's bounty.

It would appear that the relationship between the mother and her two young girls is extremely harmonious and that they will all enjoy the fruits of decedent's labors to the fullest.

If the will stands, the mother would take all and the girls would then be supported by her from what has become her assets. On the other hand, if intestacy exists, the girls would each have a separate estate of one-third of the net estate of their late father which would be subject to their maintenance, support and education.

The matter of appointment of a legal guardian for the children, named in the codicil, to administer the

separate estates of the minors seems to be the real concern involved, it being the preference of the mother that she look after them as their natural guardian and they will eventually inherit from her. The will of January 7, 1944, so provided that the widow would take all. Apparently, testator did not wish this on September 8, 1955, when he revoked the said will.

Having been a personal friend of the Holt family for many years, it is not a little difficult to find ourselves in the position of determining the construction of writing appearing on the Holt will. We call this matter, however, exactly as we see it.

Hence, this order:

### Decree

And now, February 24, 1960, it is ordered, adjudged and decreed that the words written by the late J. Leo Holt on his will dated January 7, 1944:

"Sept. 8, 1955, I hereby render this will void and intend to make one revised" and signed "J. Leo Holt" constitutes an absolute revocation of his said will of January 7, 1944;

That there appearing to be no subsequent will found among the effects of said J. Leo Holt, the said J. Leo Holt is hereby declared to have died intestate;

That the instrument dated January 4, 1944, was improperly probated and, therefore, the Register of Wills of Butler County is ordered and directed to rescind his order of probate of said will;

That the Register of Wills of Butler County is ordered and directed to rescind the letters testamentary issued by Phyllis Dittmer Holt as executrix of the estate of J. Leo Holt, deceased, and instead, issue to her letters of administration as administratrix of the estate of J. Leo Holt, deceased, upon the posting of proper bond;

That any and all acts already performed by Phyllis Dittmer Holt as executrix of the J. Leo Holt estate

shall now be considered and accepted as her acts of administratrix of her late husband's estate;

That the Butler Savings and Trust Company shall continue as the guardian of Sharon Lee Holt and Georgia Lynne Holt;

That the costs of this proceeding be paid out of the assets of the estate of J. Leo Holt as costs of administration and not charged against petitioner.

### Opinion Sur Petition for Rehearing

SHUMAKER, P. J., February 14, 1961.—This matter is before the court on a petition for rehearing.

Originally, the court had before it, in the matter of this estate, a petition for declaratory judgment to construe the legal effect of the words, "I hereby render this will void and intend to make one revised," which words were written over his signature on a will of a testator, J. Leo Holt. The court held that said words constituted a revocation of the will on which they were written. Exceptions were filed to this ruling by the widow, which exceptions were dismissed.

In the opinion dated December 19, 1960, dismissing said exceptions, the court stated: "There is no proof certain that there was not a new or revised will made except the failure to find it." This appeared in the discussion of the court that the doctrine of dependent relative revocation did not apply.

Counsel for the widow has filed this petition for rehearing in which it is averred that "the petitioner now has available evidence that a new or revised will was not made after the decedent revoked his will."

We see no useful purpose to be served by a rehearing.

The sole and initial problem involved in the declaratory judgment action was the legal significance and legal result of the words written on the testamentary document.

In clarification of the opinion disposing of the exceptions, we here state that we did not mean nor intend to infer that had there been proof adduced that testator had not made a subsequent will the court would have arrived at a different conclusion.

Certainly, the words used are not ambiguous and parol evidence should not be now introduced to explain them. They speak for themselves.

In Farmers Trust Company, Excr., v. Wilson, 361 Pa. 43, 46, it is stated:

"In Weidman's Appeal, 2 Walker 359, 361, 42 Leg. Int. 338 (1885), Mr. Justice Trunkey quoted with approval for this court to the effect that 'The question in expounding a will is not what the testator meant, but what is the meaning of his words.' That pronouncement has since been reiterated by the courts of this State many times without question down to the present: e.g., Myers Estate, 351 Pa. 472, 474, 41 A. 2d 570; Rosengarten Estate, 349 Pa. 32, 38, 36 A. 2d 310; Brock Estate, 156 Pa. Superior Ct. 616, 619, 41 A. 2d 347; Tombs Estate, 155 Pa. Superior Ct. 605, 609, 39 A. 2d 367; etc. The principle, of course, does not mean that, where a testator's intention is clear, it may be disregarded on the basis of a literal interpretation of his testamentary words. But, it does mean that a testator's intent is not to be arrived at by the expounder's subjective deductions as to what the testator might have meant, or even perhaps did mean, but did not say: cf. Ludwick's Estate, 269 Pa. 365, 371, 112 A. 543. The scope of the inquiry is limited to the meaning of what the testatrix said."

In Swope Estate, 383 Pa. 494, 496 (1955), the court stated:

"In expounding a will, it is not what the testator may have meant, but what is the meaning of his words. It does not extend to a consideration of what testator might have said, but did not say": (citing many cases).

In Swope Estate, just cited, the law is requoted in these words (page 498) :

" 'It will not do for the courts to undertake to guess at the intention of a testator and declare that to be his will. If he sees fit for any reason not to dispose of any part of his estate, or such is the result of ignorance or oversight, the courts cannot supply the gap or hiatus 'and reconstruct the will. To do so would be a perversion of the functions of the court, and deprive a testator of the right to dispose of his property.' "

In the recent case of Scarpaci Estate, 22 D. & C. 2d 602 (1959), to be found in the recent advance sheets, the President Judge of the Orphans' Court of Beaver County, the Hon. Frank E. Reed, correctly restated the law: "the court must decide from the instrument itself, not what the testator may have meant, but what is the meaning of his words, and in such case oral statements allegedly made by decedent to his executor may not be considered."

The all-important question and only question is: "What do the words used by the testator say according to law?" This question this orphans' court undertook to answer.

Hence, this order:

*Order of Court*

And now, February 14, 1961, the prayer of the petition for rehearing is refused.